UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GE CAPITAL INFORMATION TECHNOLOGY SOLUTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:11-cv-82  PPS-APR |
| CAMPBELL ADS LLC and DEBRA CAMPBELL | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Defendants Campbell Ads LLC and Debra Campbell entered into two agreements with Plaintiff GE Capital to finance a photocopier.  After Campbell stopped making the required payments, GE Capital filed a complaint, and Campbell responded with two affirmative defenses and two counterclaims.  Currently before me are GE Capital's Motion to Dismiss Defendants' Counterclaim and to Strike Defendants' Affirmative Defense [DE 28], and Campbell's request for leave to file a third party complaint.  For the reasons that follow, GE Capital's motion to dismiss the counterclaim and motion to strike the affirmative defense are granted, and Campbell's request to file a third party complaint is also granted.

**Background**

Debra Campbell is the sole member of Campbell Ads LLC, an advertising and printing company.  GE Capital is a company that finances the purchase of products, including photocopiers, from IKON Office Solutions, Inc. ("IKON").  Although GE Capital does business in Indiana as IKON Financial Services, it is not otherwise affiliated with IKON.  [DE 8.]

In May 2006, Campbell purchased a photocopier from IKON.  To finance it, Campbell

Ads LLC entered into a lease agreement with GE Capital.  Debra Campbell signed the lease for the use of photocopy machines and related office equipment as the owner of Campbell Ads, LLC, and she also signed a personal guaranty. [*Id.*] At some point, Campbell stopped making payments on the machines.  So GE Capital informed Campbell of the default, and after Campbell failed to cure the default, GE Capital filed this lawsuit. [DE 10, at 3.]

GE Capital claims that Campbell Ads breached the contract and that Debra Campbell breached the personal guaranty.  After an initial question regarding this Court's jurisdiction, the issue was later put to rest. [DE 6,10.] Campbell responded with an Answer and Counterclaim. [DE 23; DE 24.]  Campbell's Answer included two Affirmative Defenses: (1) unclean hands because GE Capital breached the Lease Agreement in failing to provide a proper working copy machine; and (2) GE Capital is not entitled to judgment because it failed to mitigate damages caused by its own faulty equipment.  [DE 23, at 6-7.]

Campbell's Counterclaim alleges breach of contract and breach of warranty. [DE 24.] The breach of contract claim states that the photocopier Campbell received, an Ikon CPP 500, failed to perform as advertised since the day it arrived.  The breach of warranty claim states that GE Capital, as a seller of goods, breached the implied warranty of merchantability in selling Campbell a photocopier that didn't function properly.

GE Capital seeks dismissal of the counterclaims and also seeks to strike Campbell's affirmative defenses.  Campbell's response to these motions lacks any argument or legal analysis.  Instead, Campbell requests leave to file a third party complaint against IKON.

## Discussion

I can quickly dispatch the request for leave to file a third party complaint first.  Under

Federal Rule of Civil Procedure 14, a defendant seeking to file a third-party complaint must obtain the court's leave to file the third party complaint more than fourteen days after serving its answer.  Campbell's proposed third party complaint alleges that IKON is liable to her for selling her a lousy copier.  Because that claim is related to the complaint brought against Campbell by GE Capital, I will grant Campbell's request to file the third party complaint.

Turning to GE Capital's motions, the minimum requirements for pleading a claim for relief in a counterclaim or affirmative defense are contained in Federal Rule of Civil Procedure 8.  That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  But to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007).  And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Iqbal*, 129 S.Ct. at 1949-50.  So under *Iqbal*, I must first identify allegations in the complaint that are not entitled to the assumption of truth by, for example, disregarding legal conclusions. *Id*. at 1951.  Then I must look at the remaining allegations to determine whether they plausibly suggest an entitlement to relief. *Id*.  Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950.

GE Capital motion poses three arguments but I need only address one of them: that the affirmative defense and counterclaims are barred by the exclusions in the lease agreement and separate written documents.  First, the lease agreement, which is attached to the original

complaint, contains an explicit choice of law provision which states that Georgia law governs the terms of the lease. [DE 29-1 at 2]. Under Georgia law, parties to a lease agreement may exclude all implied warranties of merchantability or fitness for a particular purpose by a written and conspicuous exclusion in the contract. GA. St. 11-2A-214(2), GA. St. 11-2A-214(3)(a). Whether a clause is conspicuous is a question of law. *Bailey v. Tucker Equip. Sales, Inc.*, 510 S.E.2d 904, 906 (Ga. App. 1999). A clause is considered "conspicuous" under Geogia law if it is in larger type or has other characteristics in type or color to set it apart from the rest of the document. *See* Ga. St. 11-1-201(10).

> GE Capital points to paragraph 6 of the lease agreement, which looks like this:
>
> We transfer to you, without recourse, for the term of this Agreement, any written warranties made by the manufacturer with respect to the Equipment. Since we are a finance company and neither the manufacturer nor the distributor of the Equipment, WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE. You acknowledge that you have selected the Equipment you are renting from us based on your own judgment and you hereby affirmatively disclaim reliance on any oral representation concerning the equipment made to you.

[DE 29-1, at 2.]

Campbell doesn't respond to GE Capital's argument beyond it's cursory denial. In viewing the lease agreement, the exclusion language is plainly conspicuous under Georgia law because it is in a different type size than the surrounding text. Ga. St. 11-1-201(10)(B). Campbell therefore is barred from asserting the breach of warranty counterclaim.

As to the breach of contract and affirmative defenses, GE Capital cites the following waiver language in the lease:

> If you default, we have the right to exercise any and all legal remedies to us by applicable laws, including Article 2A of the Uniform Commercial Code. YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES AS A CUSTOMER OR

>   LESSEE THAT YOU HAVE UNDER ARTICLE 2A AGAINST US (BUT NOT AGAINST THE MANUFACTURER)."

[DE 10-1, at 2.] GE Capital's position is that this language precludes any claim relating to how the photocopier functioned because Campbell waived such claims. And there is persuasive authority supporting this point. *Locke's Graphic & Vinyl Signs, Inc. v. Citicorp Vendor Fin., Inc.*, 648 S.E.2d 156 (Ga. App. 2007). In *Locke*, a finance company sued the defendant after the defendant defaulted on an equipment lease agreement. The agreement included a disclaimer of all warranties and provided that the defendant's obligations were absolute, unconditional, and not subject to abatement, set-off, or defense. *Id.* at 157. Ultimately the court affirmed the trial court's conclusion that the defendant couldn't maintain its counterclaim or defense related to the equipment's functionality. *Id.* at 158.

I'm dealing with the same set of facts here, the only distinction being that in *Locke*, the court took into account the defendant's acknowledgment that the printer had been delivered and installed satisfactorily. *Id.* at 158. Here, although GE Capital attached the acceptance receipt to its motion [DE 29-5], at the motion to dismiss stage, I can't consider this document because it was not attached to the Amended Complaint or Counterclaim. And I have to accept as true Campbell's allegation that "since the day it arrived," the photocopier didn't work. [DE 24, at 2.] But that difference doesn't change my conclusion. The only significance of the acceptance receipt is that to sustain a breach of the implied warranty of merchantability claim, the defect had to be present at the time of acceptance. *See Griffith v. Medical Rental Supply of Albany*, 534 S.E.2d 859, 861 (Ga. App. 2000). But since I have already concluded that the breach of warranty claim cannot go forward because of the conspicuous language excluding such a claim, whether the copier was functioning properly upon receipt is immaterial. In sum, since both the

affirmative defenses and the breach of contract claim deal with the functionality of the photocopier, and the lease agreement bars such claims, they are dismissed.

GE Capital's Motion to Strike Affirmative Defenses and Motion to Dismiss Counterclaim are both **GRANTED**, but Defendants' motion for leave to file a third party complaint against Ikon Office Solutions, Inc. is **GRANTED**.

**SO ORDERED**.

ENTERED: November 21, 2011.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
