UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GE CAPITAL INFORMATION TECHNOLOGY SOLUTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:11-cv-082-PPS-APR |
| CAMPBELL ADS LLC and DEBRA CAMPBELL | ) ) ) ) | |
| Defendants. | ) ) | |
| CAMPBELL ADS LLC and DEBRA L. CAMPBELL, | ) ) ) ) | |
| Third Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| IKON OFFICE SOLUTIONS, INC., | ) ) ) | |
| Third Party Defendant. | ) ) ) | |

**OPINION AND ORDER**

Almost everyone is familiar with the old adage, "you can't have your cake and eat it too." What that means is that when you are faced with two mutually exclusive options, you have to choose one or the other. Or to use another popular idiom, you can't have it both ways.

Third-party Defendant IKON Office Solutions violates this principle with its pending Motion to Dismiss the First Amended Third-Party Complaint of Debra Campbell and Campbell Ads LLC. Previously, Campbell and Campbell Ads tried to assert a breach of contract claim against IKON Office. IKON Office asked me to dismiss it because they weren't a party to the

agreement in question. I agreed and dismissed that complaint with leave to amend. Campbell and Campbell Ads then brought an amended third-party complaint, asserting intentional misrepresentation claims against IKON Office. IKON Office now moves to dismiss those claims under the theory that the same contract that it previously argued *didn't* bind it now should operate to preclude them. In other words, IKON Office wants all of the benefits of the contract without any of the obligations.

It is true that the contract in question identifies IKON Office as an intended beneficiary of Campbell's and Campbell Ads' *payment* obligations. But the agreement says nothing about whether the separate and distinct integration clause cited by IKON Office is intended to benefit any third parties. Therefore, I find that the company is not an intended beneficiary of that particular provision, and as such, it cannot invoke it to defeat Campbell's and Campbell Ads' fraud claim. That count will go forward.

That said, I agree with IKON Office that Campbell's and Campbell Ads' breach of warranty, unconscionability and indemnification claims are all barred, albeit for the different reasons explained below. So those claims will be dismissed. Therefore, IKON Office's Motion to Dismiss (DE 72) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This is my third dismissal opinion in the case. (DE 39; DE 68.) I've already summarized the relevant background twice, and I don't need to do it again. The background sections from my prior dismissal orders are hereby incorporated by reference in this opinion. (DE 39 at 1-2; DE 68 at 2.)

There's one thing that needs to be discussed in a little fuller detail, however – the Image

Management Plus Agreement between GE Capital Information Technology Solutions, Inc. d/b/a IKON Financial Services and Campbell Ads LLC. (DE 73-1.) This document is, at its core, a financing agreement. Put simply, Campbell Ads simultaneously leased two photocopiers in a separate transaction with IKON Office, and this contract is the mechanism by which the company funded the transaction through GE Capital. (DE 68 at 2 (describing the agreement).)

Over the course of this litigation, it has become apparent that one overarching question concerns IKON Office's connection with the agreement. In an early order, I basically concluded that it was little to none. (DE 68 at 3-4.) But now, IKON Office invokes one of the provisions in that agreement in an attempt to defeat the fraud claim pending against it.

So what *does* the Image Management Plus Agreement say about IKON Office? Well, in tiny fine print in Paragraph 7, the agreement says that the lessee "may elect" to have IKON Office service the leased equipment. (DE 73-1 at 2.) Paragraph 9 says that the lessor will pay all shipping costs for the return of the equipment at the conclusion of the lease if replacement equipment is leased from IKON Office. (*Id.*) Paragraph 11 specifies that IKON Office will not be liable for any legal action taken on behalf of GE Capital. (*Id.*)

Paragraph 15 addresses the connection between IKON Office and the agreement much more extensively. First, it states that IKON Office's service commitments listed on an attached page (which isn't included as an exhibit) are separate and distinct obligations, and they cannot be enforced against GE Capital. (*Id.*) Second, and most important to the matter currently before me, the agreement identifies IKON Office as an intended beneficiary of the payment obligations imposed by the Agreement. (*Id.*) It specifies: "Accordingly, you and we expressly agree that IKON is an intended party beneficiary *of your payment obligations* hereunder." (*Id.* (emphasis

3

added.) It is silent as to IKON Office's status as an intended beneficiary under any other provision or promise in the contract.

Finally, IKON Office's Motion to Dismiss implicates one of those other provisions – the so-called integration clause. That provision states: "You acknowledge that you have selected the Equipment you are renting from us based on your own judgment and you hereby affirmatively disclaim reliance on any oral representations concerning the Equipment made to you." (*Id.* (emphasis omitted).) Again, the contract is silent as to whether this clause is intended to benefit any party other than GE Capital.

## STANDARD OF REVIEW

The minimum requirements for pleading a claim for relief in a counterclaim or affirmative defense are contained in Rule 8 of the Federal Rules of Civil Procedure. That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. But to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). At this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, but I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *See Iqbal*, 556 U.S. at 678-79. So under *Iqbal*, I must first identify allegations in the complaint that are not entitled to the assumption of truth by, for example, disregarding legal conclusions. *Id*. at 678. Then I must look at the remaining allegations to determine whether they plausibly suggest an entitlement to relief. *Id*. Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and

common sense.  *Id*. at 679.

**DISCUSSION**

IKON Office asks me to dismiss the Third Party Amended Complaint for three reasons. First, it argues that Campbell's and Campbell Ads' intentional misrepresentation (*i.e.*, fraud) claim is barred by the integration clause in the Image Management Plus Agreement.  Second, it contends that Campbell's and Campbell Ads' breach of warranty claim is identical to the one I previously dismissed in the case, and that its related unconscionability claim is barred by the applicable Georgia law.  Third, it asserts that under Indiana law a contract-related injury cannot be the basis for an indemnification claim like the one brought by Campbell and Campbell Ads. The only real argument here concerns the first of these.  But before I get to it, I need briefly address the other two claims.

**Warranty, Unconscionability and Indemnification Claims**

With respect to the warranty claim, IKON Office is right.  It's indistinguishable from the one I dismissed in the prior third-party complaint as time-barred, at least in substance.  (DE 68 at 4.)  With respect to the unconscionability claim, I'm not even sure what it's alleging. Unconscionability is a *defense* to a breach of contract claim, not an offensive legal theory.  *See Driggers v. Campbell*, 543 S.E.2d 787, 790-91 (Ga. Ct. App. 2000).  And in any event, as IKON Office observes, it isn't a party to the contract that Campbell and Cambell Ads say is unconscionable.  Therefore, the second count is dismissed in its entirety.

Dismissal is also warranted for the indemnification claim – but not for the reason that IKON Office asserts.  The company argues that I should dismiss the claim because under Indiana law, a party can't assert an indemnification claim for contractual damages.  The main problem is

5

that IKON Office only cites two federal district court cases for this proposition. The second, *Joshi v. United States*, No. 3:08–cv–498–JTM–CAN, 2009 WL 2449234 (N.D. Ind. Aug. 6, 2009), isn't really on point. The first, *Ball v. Versar, Inc.*, No. IP 01–0531–C H/K, 2002 WL 33964449 (S.D. Ind. Sept. 6, 2002), is, and it's persuasively reasoned by Judge Hamilton, but of course it's not binding authority. My independent research has not uncovered any Indiana state appellate decision on point.

It matters not because there's an easier way to go about this. Under Indiana law, "[t]he obligation to indemnify does not arise until the party seeking indemnity suffers loss or damages; that is, at the time of payment of the underlying claim, payment of a judgment on the underlying claim, or payment in settlement of the underlying claim." *TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1376-77 (Ind. Ct. App.1989); *accord Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard*, *PC*, 929 N.E.2d 838, 848-49 (Ind. Ct. App. 2010). This means that if a party being sued for something wants to assert an indemnification claim in connection with that lawsuit, it must wait until it loses and pays the judgment. *See Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008); *Indianapolis-Marion County Publ. Library*, 929 N.E.2d at 849. That hasn't happened yet with respect to Campbell and Campbell Ads. If Campbell or Campbell Ads gets socked with a judgment – and then pays it – it then can try to bring an indemnification claim. But for now, it is premature, and so the claims will be dismissed, albeit without prejudice.

## Intentional Misrepresentation

Now I'll turn to the one claim that has some real meat to it – the intentional misrepresentation or fraud claim. IKON Office essentially asserts that the integration clause in

6

the Image Management Plus Agreement ultimately precludes that claim. (DE 73 at 4-6.)

The basic argument goes like this: Under Georgia law (which IKON Office says applies), a party claiming that he or she was fraudulently induced to enter a contract has two options – affirm the agreement and sue for contractual damages, or rescind it and sue under a tort theory. Here, the company contends that because Campbell and Campbell Ads kept the copiers in question long after they became aware that the copiers did not function as they (allegedly) had been promised, they necessarily chose the first of these options. Therefore, the argument goes, having constructively affirmed the contract, Campbell and Campbell Ads were bound by its terms. That specifically includes the integration clause, which states that they did not rely on any representations outside of the contract itself when entering into the lease agreement. And there you have it. The Image Management Plus Agreement bars Campbell's and Campbell Ads' intentional misrepresentation claim.

There's only one problem with this line of reasoning. *IKON Office isn't a party to the Image Management Plus Agreement*. Not only that, but the company was particularly adamant in the past about how as a non-party, it shouldn't be obligated under the agreement. In fact, that was the primary basis for my prior dismissal of the contract claims against it.

So what's the theory under which IKON Office is attempting to invoke the integration clause in the Image Management Plus Agreement? Well, IKON Office argues, although it isn't a party to the agreement, it's still an intended beneficiary to it. IKON Office cites the language in Paragraph 15 that I alluded to above, which says that the company is an intended beneficiary of any payment obligations under the agreement. I have to decide whether that's enough to allow it to invoke the integration clause.

But first, I need to figure out what law to use. IKON Office says that it's Georgia law based on a choice-of-law provision in the Image Management Plus Agreement. That sort of clause is normally respected by Indiana courts when undertaking their choice-of-law analysis.[1] *See Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).

I should note at this point that I previously expressed some doubt that the choice-of-law provision could apply here because IKON Office isn't a party to the contract containing it. (DE 79 at 2.) On closer analysis, however, I think that it probably does. Indiana state courts appear to be silent on the specific issue, but at least one Seventh Circuit case has held that when an agreement contains a choice-of-law clause selecting the law of a particular state, that law should be used to determine whether a third party is an intended beneficiary to the agreement. *See Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787-88 (7th 2000); *see also Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, --- F.3d ----, 2013 WL 104984, at *3-4 (11th Cir. 2013). And in any event, Campbell and Campbell Ads haven't argued that Georgia law doesn't apply, so they've likely waived the issue. *See Bennett v. CrownLife Ins. Co.*, 776 N.E.2d 1264, 1267-68 (Ind. Ct. App. 2002).

According to the Georgia Supreme Court, "[i]n order for a third party to have standing to enforce a contract... it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." *Miree v. United States*, 249 S.E.2d 573, 579 (Ga. 1978) (*quoting Stewart v. Gainesville Glass Co.*, 206 S.E.2d 857 (Ga. 1974)); *accord Anderson v. Atlanta Comm. for Olympic Games, Inc.*,

---

[1] Because this is a diversity action, I must use the choice-of-law rules of the forum state in which I am sitting. *See Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001).

537 S.E.2d 345, 349 (Ga. 2000). Typically, the easiest and best way for a third party to achieve intended beneficiary status is to be identified as such by the contract in question. *See, e.g., Am. Computer Tech., Inc. v. Hardwick*, 616 S.E.2d 838, 842 (Ga. Ct. App. 2005). As I noted above, the Image Management Plus Agreement expressly designates IKON Office as an intended beneficiary of Campbell Ads' payment obligations under the contract.

The problem is that IKON Office isn't trying to enforce any contractual obligation for Campbell or Campbell Ads to pay it (or GE Capital) money. Instead, it's trying to enforce a separate and distinct provision – the integration clause specifying that Campbell and Campbell Ads didn't rely on any representations or warranties outside of the agreement. And there's no express indication in the agreement that IKON Office was intended to be a beneficiary of *that* provision. That fact makes all the difference.

A recent decision from the Georgia Supreme Court is very much on point on this issue. In *Archer Western Contractors, Ltd. v. Estate of Pitts*, 735 S.E.2d 772 (Ga. 2012), the estate of a subcontractor's employee killed in a construction accident at an Atlanta airport brought a lawsuit against several contractors. It alleged that he was an express intended beneficiary to an agreement between them and the City of Atlanta, which promised that the contractors would require their subcontractors to carry certain insurance coverages (and which identified classes of intended beneficiaries of those coverages). *Id.* at 776-78. The Georgia Supreme Court disagreed. It first questioned whether the employee fell in the category of intended beneficiaries identified by the agreement. *Id.* But even if he did, the court went on, the intent to benefit that class didn't extend to the provisions in question. It held:

> But in the contracts at issue here, each party to those contracts – the City [and the contractors – was a promisor with respect to some contractual promises and was a

9

> promisee with respect to others. And it is perfectly clear that, even if [the employee] is an intended beneficiary of the [contract at issue], *he is not an intended beneficiary of every promise contained in the contracts.* To determine the extent to which the estate and children properly may sue any one of the parties to these contracts as a "promisor," it is essential to identify the specific contractual promises, if any, of which Pitts was an intended beneficiary, *and his rights as an intended beneficiary attach only to those promises*.

*Id.* at 778 (emphasis added). In other words, the *Archer Western Contractors* decision is clear that an intended beneficiary to a contract can only can seek to enforce the particular provisions or promises that are intended to benefit him or her. That beneficiary can't sue to enforce any other provision that's not.

Applying this holding to the matter before me is straightforward. IKON Office's designation as an intended beneficiary to the Image Management Plus Agreement is limited on its face to Campbell Ads' payment obligations. The agreement says *nothing* about whether IKON Office is an intended beneficiary with respect to any other obligation or provision in the contract, specifically including the separate and distinct integration clause.

In this regard (and as I noted in a prior order), Georgia cases generally suggest that these sorts of integration or merger provisions can't be invoked by a third party absent clear indication that it was intended to be a beneficiary of them. *See, e.g., Textile Rubber & Chem. Co., Inc. v. Thermo-Flex Techs., Inc.*, 706 S.E.2d 728, 735-36 (Ga. Ct. App. 2011) (stating general rule but deciding the case on different grounds); *Yee v. Barnwell*, 389 S.E.2d 392, 393-94 (Ga. Ct. App. 1989) (same). And as I just said, there's no indication that this was the intent in this case. Indeed, there's probably a good argument that the fact that the Image Management Plus Agreement expressly limits IKON Office's beneficiary status to payment obligations implies that it is not a beneficiary with respect to any other provision. *See, e.g., Krogh v. Pargar, LLC*, 625

10

S.E.2d 435, 439 (Ga. Ct. App. 2005) (noting that the fact that contract specified that some payments were nonrefundable implied that others were not).

There's one other matter to discuss. At the January 23, 2013 hearing on IKON Office's Motion to Dismiss, counsel for the company suggested that the integration clause must be intended to benefit it as a practical matter. She explained that IKON Office representatives are the only ones who talk to potential customers, so they're the only ones who could make the sorts of representations that might implicate the provision. That strikes me as disingenuous. Essentially, IKON Office contends that I should go beyond the terms of the Image Management Plus Agreement to read in some sort of agency relationship between IKON Office and GE Capital – all in order to conclude that IKON Office is covered by an integration clause *disclaiming the existence of any promises or representations outside of the contract in the first place*.

Once again, IKON Office is offering a "heads I win, tails you lose" proposition. Either extracontractual evidence is relevant, or it's not. IKON Office can't have it both ways. The bottom line is that Campbell's and Campbell Ads' intentional misrepresentation claims against IKON Office may seem farfetched as a factual matter, but they're not precluded by the Image Management Plus Agreement for the simple reason that the company isn't a party to that contract.

## CONCLUSION

Therefore, IKON Offices Motion to Dismiss the Third Party Complaint (DE 72) is **GRNATED IN PART** and **DENIED IN PART**. The warranty, unconscionability and indemnification claims against it are **DISMISSED**. The intentional misrepresentation claim will

go forward.

**SO ORDERED**.

ENTERED: February 11, 2013.

                                               s/ Philip P. Simon
                                               PHILIP P. SIMON, CHIEF JUDGE
                                               UNITED STATES DISTRICT COURT